COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TEXAS MUTUAL INSURANCE COMPANY AS SUBROGEE OF EVARISTO MEDRANO, | § | No. 08-09-00150-CV |
| | § | Appeal from the |
| Appellant, | § | 109th District Court |
| v. | § | of Winkler County, Texas |
| MAURILLO URQUIDI OLIVAS, INDIVIDUALLY AND D/B/A OLIVAS TRUCKING, | § | (TC# 15,426) |
| | § | |
| Appellee. | | |

## O P I N I O N

In four issues, Appellant, Texas Mutual Insurance Company, (Texas Mutual), asserts that the trial court committed error in dismissing this case for want of prosecution, in granting Appellee's motion to dismiss, in denying Texas Mutual's motion to reinstate, and in striking Texas Mutual's petition for intervention. We affirm the judgment of the trial court.

## BACKGROUND

On January 21, 2008, Plaintiff, Evaristo Medrano (Medrano), filed suit against Appellee, Maurillo Urquidi Olivas, individually and doing business as Olivas Trucking (Olivas), for personal injuries arising from a motor vehicle accident that occurred on or about March 28, 2006, while Medrano was allegedly engaged in the course and scope of his duties as an employee of Longhorn Service & Drilling Co. (Longhorn). According to the pleadings, Longhorn carried a policy of worker's compensation insurance issued by Texas Mutual. Texas Mutual was not a named party in Medrano's suit against Olivas.

*Dismissal of Case*

On October 17, 2008, the trial court issued an order setting the case for trial on March 10, 2009. At 4 p.m. on March 9, 2009, the day before trial, Medrano's attorney, Mr. Israel Guardiola, filed a motion for continuance stating that Medrano had been deported to Mexico, that he had been unable to effectively communicate with Medrano, and that he needed more time to attempt to secure Medrano from Mexico and to file additional medical documentation by affidavit. Mr. Guardiola also filed a motion to withdraw because he would not be able to prepare for trial without the assistance of Medrano.

Olivas responded to the motion for continuance, arguing that the case had been set for trial after settlement negotiations failed and that Olivas, a sole proprietor who earned his living with his truck, was ready for trial, had made business arrangements to attend trial, and was ready to bring the litigation to a close. Olivas also submitted an affidavit in which he specified that he had been relieved to know that the litigation would conclude during the week of March 10, 2009, and stated that, if the trial was continued, he would have to worry about further business interruptions until the trial was rescheduled, would be required to make new arrangements with customers, and would again be required to miss work in order to attend trial.

On March 10, 2009, the date of trial, the trial court conducted a hearing at which it considered Medrano's request for continuance. At the hearing, Mr. Guardiola informed the trial court that: (1) Medrano had been deported "sometime last year;" (2) there had been limited telephonic communications between them; (3) he had not been able to bring Medrano back into the United States; and (4) he did not know if he would be able to bring Medrano back into the country for trial. Mr. Guardiola stated that he would like to attempt to bring Medrano back to the United States because he would not be able to prove his case, specifically as to damages, without Medrano present.

In response, Olivas's counsel, Mr. James Rush, objected to Medrano's motion for continuance, announced that he was ready for trial, and noted that Mr. Olivas had made arrangements to be present for trial since October 2008. Mr. Rush stated that he had filed a motion to dismiss the case due to Medrano's failure to appear for trial.

Responding to Olivas's motion to dismiss, Mr. Guardiola explained that, without a continuance and without Medrano, he could not present a case. The trial court denied Medrano's motion for continuance and, granting Olivas's motion, dismissed the case for want of prosecution without prejudice.

*Post-dismissal Motions*

On April 3, 2009, Texas Mutual filed a plea in intervention as a subrogee of Medrano, seeking to assert a right of subrogation to recover from Olivas benefits paid to and on behalf of Medrano. Texas Mutual contended that the intervention was almost essential to effectively protect its interest and would not complicate the case excessively as it arose from the same facts and circumstances as the original suit. Texas Mutual also filed a verified motion to reinstate the case. Citing *Texas Mutual Insurance Company v. Ledbetter*, 251 S.W.3d 31, 36 (Tex. 2008), in both its plea and motion, Texas Mutual asserted that the plea in intervention may be filed after judgment is rendered when the intervenor is a subrogee whose interest was at first adequately represented by someone else but was later abandoned.

Olivas filed both a motion to strike Texas Mutual's plea in intervention and a response to the motion to reinstate the case, noting that the *Ledbetter* case permitted a subrogee to intervene after judgment or on appeal only if there is neither delay nor prejudice to the existing parties. Olivas asserted that he would suffer substantial delay and prejudice as he had already appeared and was ready for trial on March 10, 2009, and had incurred significant expenses in the form of attorney's

fees and videography services secured for the March 10, 2009, trial.[1]  Olivas noted that if Texas

Mutual's plea and motion were granted, he would again be subject to the process of discovery, and

claimed that any additional discovery or new theories of the case that Texas Mutual may wish to

pursue would adversely impact Olivas's livelihood as he would again need to set aside time from

his business to subject himself to discovery and trial for a second time.  Olivas contended that the

intervention and reinstatement of the case would  not only adversely affect him but would result in

lost time to the Court as it evaluated Texas Mutual's theories, would further delay resolution of the

case, and argued that Texas Mutual had not offered a remedy for the situation that led to the case

being dismissed for want of prosecution, namely, that Medrano was not within the country.  Olivas

also noted that Texas Mutual had not provided in its motions any of the grounds for reinstatement

of a case dismissed under Rule 165a of the Texas Rules of Civil Procedure.  TEX. R. CIV. P. 165a.

Texas Mutual responded by providing documentary evidence to show that Mr. Rush was

aware of its interest as a subrogee, but did not provide any evidence in support of its assertion that

Mr. Guardiola had agreed to represent Texas Mutual's subrogation interest at trial.  Rather, Texas

Mutual attached letters showing that it had notified Mr. Guardiola  as well as Mr. Rush and Olivas's

insurance carrier that it was claiming a subrogation lien, was pursuing a subrogation claim or action

regarding the accident, and asserting that it had first right to receive reimbursement in the event that

Medrano received any money as a result of a settlement or judgment.  Texas Mutual also provided

an affidavit from its subrogation specialist, Mr. Guerrero, in which he averred:  (1) that he had

spoken with Olivas's attorney about its subrogation lien, and (2)  that he was notified on March 3,

2009, a week before trial was scheduled to commence, that Mr. Guardiola planned to file a motion

---

[1]  Attached to Olivas's motion and response was an invoice sent to Olivas dated March 13, 2009, from a video services company related to court-presentation set up, wait time, and equipment "take down" on March 10, 2009, at an expense of $450 as well as other trial-related costs incurred, totaling $650.

for continuance as well as a motion to withdraw as Medrano's counsel. Mr. Guerrero stated that he had expected the motion for continuance to be granted.

*Post-dismissal Hearing*

The trial court held a hearing to consider Texas Mutual's plea in intervention and motion to reinstate. At the hearing, Texas Mutual again asserted that Mr. Guardiola had been representing it at trial and then abandoned the case. Texas Mutual declared to the trial court that it knew how to contact Medrano and would go into Mexico to depose him, and it also asserted that its intervention was timely and involved the same facts as the dismissed case. Then, the following colloquy ensued:

| | |
|---|---|
| Texas Mutual: | [W]e are a proper party, and this intervention is essential to represent our interests. All parties were on notice of our interests at the time the case was called to trial. And dismissing the case without any notice to us prejudices our rights in that we will not be able to recover anything from Mr. -- |
| Trial Court: | Well, who is giving you notice? |
| Texas Mutual: | Excuse me? |
| Trial Court: | Who do you expect to give you notice? |
| Texas Mutual: | I guess I would expect that someone would notify us if . . . a motion to dismiss [was] filed in this case in order that we would intervene and know that we could protect our rights instead of being notified after the fact that the case was dismissed. |
| Trial Court: | So there is an obligation by somebody to notify all people that might have a possibility to intervene? How is that possible? |
| Texas Mutual: | Your Honor, what I'm saying is if the case had been continued, we would have known to intervene because the Plaintiff's counsel notified us he was withdrawing. But by just calling the case for trial and dismissing it out of hand without any opportunity for us to intervene does prejudice our rights. And so that's why we're here today asserting our – |

Trial Court:       So the court should always grant a continuance in case there is somebody that might be able to intervene?

Texas Mutual:      The claimant has that right to his day in court, Your Honor. And if his counsel was withdrawing, it seemed . . . that he should be given the opportunity to retain new counsel.

Trial Court:       What about [defense counsel]? He and his [client] prepared for trial and were sitting here ready to go on that day.

                                        .   .   .

Trial Court:       Who bears the cost of that?

Texas Mutual:      I don't know, Your Honor, but . . . the cost of litigation is the cost of litigation anywhere. And I saw that the bill was $650. And, yes, the case has been prepared for trial and we can bring it to trial.

Trial Court:       When?

Texas Mutual:      I knew you were going to ask me that. I don't know when the court has the next trial setting. We need some time to go find Mr. Medrano.

Trial Court:       Well, that's what I'm saying, you – first of all, you told me that you could do it and it's not going to require any delay to the [defendant] in this case, but then you tell me you've got to find Mr. Medrano and go take his deposition.

Texas Mutual:      Well, we have other records that we can present . . . . I mean, we don't have only Mr. Medrano, but we do have to get the case ready for trial. And I don't know when the next trial setting is that you could give us. . . . And I think that, you know, in order to give us our day in court is the right thing for the court to do.

Trial Court:       Well, you have to ask for your day in court, don't you?

Texas Mutual:      That's what I'm doing here today, Your Honor. I'm intervening and asking that the case be reinstated. Plaintiff's counsel abandoned our case. He was representing us up until that day.

Mr. Rush reminded the trial court of the facts it had before it when it dismissed the case,

argued that the intervention was not proper as it would delay the case for an unknown period of time, perhaps years, especially since Medrano had been deported to Mexico and was not readily available for trial, and noted that it had been Medrano's failure to appear at trial, and not counsel's withdrawal or alleged abandonment of the case, that had formed the trial court's basis for dismissing the case for want of prosecution. Mr. Rush further contended that granting Texas Mutual's requests would otherwise severely prejudice Olivas in that every additional appearance for a deposition or hearing would again interfere with his ability to make a living, and noted that Olivas had already spent thirteen months preparing for trial before the case was dismissed and had already expended funds for trial-related services during that time.

Without filing any findings of fact or conclusions of law, the trial court granted Olivas's motion to strike intervention and denied Texas Mutual's motion to reinstate the case. Texas Mutual filed this appeal.

## DISCUSSION

### Standard of Review

We review a trial court's decision to dismiss a case for want of prosecution under a clear abuse-of-discretion standard. *See State v. Rotello*, 671 S.W.2d 507, 508-09 (Tex. 1984); *Fox v. Wardy*, 234 S.W.3d 30, 32 (Tex. App. – El Paso 2007, pet. dism'd w.o.j.); *Dick Poe Motors, Inc., v. DaimlerChrysler Corp.*, 169 S.W.3d 478, 484 (Tex. App. – El Paso 2005, no pet.); *Herrera v. Rivera*, 281 S.W.3d 1, 6 (Tex. App. – El Paso 2005, no pet.); *Fox v. Wardy*, 225 S.W.3d 198, 199 (Tex. App. – El Paso 2005, pet. denied) ("The decision to dismiss a case for want of prosecution rests within the sound discretion of the trial court, and can be disturbed on review only if it amounted to a clear abuse of discretion."). A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner, or when it acts without reference to any guiding rules or principles. *See*

*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Fox*, 234 S.W.3d at 32; *Dick Poe Motors*, 169 S.W.3d at 484;  *Herrera*, 281 S.W.3d at 6.  However, a trial court does not abuse its discretion when it bases its decision on conflicting evidence or when some evidence of a substantive and probative character exists to support the trial court's decision.  *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998).  We may not reverse for abuse of discretion merely because we disagree with the decision of the trial court.  *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex. 1995); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Herrera*, 281 S.W.3d at 6.

*Failure to Provide Notice of Intent to Dismiss*

Appellant's first issue contends that the trial court abused its discretion by dismissing the case without providing notice.  A party must be provided with notice and an opportunity to be heard before a trial court may dismiss a case for want of prosecution under either its inherent power or Rule 165a.  *See* TEX. R. CIV. P. 165a(1); *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999).  Therefore, a trial court's failure to provide adequate notice generally requires reversal as a party's due-process rights have been violated.  *Villarreal*, 994 S.W.2d at 630-31.  However, "a trial court does not abuse its discretion by denying a motion to reinstate if the movant (a) receives notice of the actual order of dismissal in time to file a motion to reinstate, and (b) has an opportunity to be heard on the motion."  *Keough v. Cyrus U.S.A., Inc.*, 204 S.W.3d 1, 5-6 (Tex. App. – Houston [14th Dist.] 2006, pet. denied).  Consequently, a "motion to reinstate with the opportunity for a hearing cures the due process violations . . . ."  *Finlan v. Peavy*, 205 S.W.3d 647, 655 (Tex. App. – Waco 2006, no pet.); *see also Wright v. Tex. Dept. of Criminal Justice-Institutional Div.*, 137 S.W.3d 693, 695 (Tex. App. – Houston [1st Dist.] 2004, no pet.); *Tex. Sting, Ltd. v. R.B. Foods, Inc.*, 82 S.W.3d 644, 648-50 (Tex. App. – San Antonio 2002, pet. denied); *Franklin v.*

*Sherman Indep. Sch. Dist.*, 53 S.W.3d 398, 402-03 (Tex. App. – Dallas 2001, pet. denied).

The trial court below did not provide written notice to Medrano prior to dismissing the case for want of prosecution. However, after the trial court issued its order of dismissal, Texas Mutual, rather than Medrano, filed a motion to reinstate the case, and the trial court entertained a hearing on the motion. As a result, any due-process violations resulting from the failure to give notice prior to dismissal were cured and no reversible error is shown. *See Keough*, 204 S.W.3d at 6. ("Keough received actual notice of the order of dismissal and timely filed a motion to reinstate. There is no indication she did not have an opportunity to be heard. Thus, if the trial court failed to notify Keough of its intent to dismiss her case, the error was cured."); *Finlan*, 205 S.W.3d at 655-56 ("we maintain that the timely received notice of dismissal and a motion for new trial and motion to reinstate with the opportunity for a hearing cures the due process violations, if any, caused by a lack of notice prior to the actual dismissal in this case"); *Tex. Sting*, 82 S.W.3d at 650 n.6 ("we believe appellants were afforded due process in this instance because they had a post-dismissal hearing on their motion for new trial that remedied any violation of their rights occurring before the dismissal of their lawsuit"); *Franklin*, 53 S.W.3d at 402-03 ("Courts that have addressed this issue have uniformly held that when the trial court holds a hearing on a motion to reinstate while the court had full control of its judgment, and the dismissed party thereby receives the same hearing with the same burden of proof it would have had before the order of dismissal was signed, no harmful error is shown."). Appellant's first issue is overruled.

### Good Cause and Motion to Reinstate

In its second issue, Texas Mutual complains that the trial court erred in dismissing the case for want of prosecution because Medrano showed good cause for retaining the case on the court's docket. In its third issue, Texas Mutual complains that its failure, as well as Medrano's failure, to

appear at trial was not intentional nor the result of conscious indifference and, consequently, claims that the trial court erred when it denied Texas Mutual's motion to reinstate the case. We consider these issues together.

Both Rule 165a of the Texas Rules of Civil Procedure and the court's inherent power grant a trial court authority to dismiss a case for want of prosecution. *See* TEX. R. CIV. P. 165a(1)-(2); *Villarreal*, 994 S.W.2d at 630; *Fox*, 234 S.W.3d at 32; *Dick Poe Motors*, 169 S.W.3d at 484. Unless there is good cause to maintain the case on the docket, the trial court is required to dismiss the case at the dismissal hearing. TEX. R .CIV. P. 165a(1). A dismissal under Rule 165a is appropriate when a party fails to appear for any hearing or trial for which he had notice. *See* TEX. R. CIV. P. 165a(1). Under the common law, a trial court possesses the inherent power to dismiss a case independently of the rules of procedure when a plaintiff fails to prosecute its case with due diligence. *Villarreal*, 994 S.W.2d at 631-32; *Dick Poe Motors*, 169 S.W.3d at 484. The factors a trial court may consider in dismissing a case under its inherent power include the length of time the case was on file, the extent of activity in the case, whether a trial setting was requested, and the existence of reasonable excuses for delay. *Maida v. Fire Ins. Exchange*, 990 S.W.2d 836, 842 (Tex. App. – Fort Worth 1999, no pet.), *citing King v. Holland*, 884 S.W.2d 231, 237 (Tex. App. – Corpus Christi 1994, writ denied). We must look to the record in its entirety. *Bilnoski v. Pizza Inn, Inc.*, 858 S.W.2d 55, 58 (Tex. App. – Houston [14th Dist.] 1993, no writ). The complaining party has the burden to bring forth a record to support its contention. *See Fox*, 225 S.W.3d at 200; *American Paging of Texas, Inc. v. El Paso Paging Inc.*, 9 S.W.3d 237, 240 (Tex. App. – El Paso 1999, pet. denied). The trial court's decision will be reviewed to determine whether the litigant demonstrated good cause for not prosecuting with greater diligence. *See Callahan v. Staples*, 139 Tex. 8, 161 S.W.2d 489, 491 (1942). When a trial court does not specify under what ground it was exercising its authority to

dismiss the case, we may affirm the judgment under any applicable legal theory. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987); *Fox*, 225 S.W.3d at 200 ("If the order does not specify a particular reason for the dismissal, we will affirm if any proper ground supports the dismissal."); *City of Houston v. Thomas*, 838 S.W.2d 296, 297 (Tex. App. – Houston [1st Dist.] 1992, no pet.).

A trial court must reinstate a case upon the proper filing of a motion if it finds after a hearing that the failure of the party or his attorney to appear at trial was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained. TEX. R .CIV. P. 165a(3). A determination of whether a failure to appear was not intentional or was the result of conscious indifference is within the trial court's fact-finding discretion. *Johnson v. Hawkins*, 255 S.W.3d 394, 398 (Tex. App. – Dallas 2008, pet. denied) *citing Price v. Firestone Tire & Rubber Co.*, 700 S.W.2d 730, 733 (Tex. App. – Dallas 1985, no writ). We review the denial of a motion to reinstate under a clear abuse-of-discretion standard. *See State v. Rotello*, 671 S.W.2d 507, 509 (Tex. 1984), *quoting Bevil v. Johnson*, 157 Tex. 621, 307 S.W.2d 85, 87 (1957); *Johnson v. Hawkins*, 255 S.W.3d 394, 397 (Tex. App. – Dallas 2008, pet. denied); *Hung v. Bullock*, 180 S.W.3d 931, 932 (Tex. App. – Dallas 2006, no pet.); *Herrera*, 281 S.W.3d at 6. In determining whether a trial court should have granted a motion to reinstate a case, we look to whether a party has prosecuted the matter with due diligence. *Herrera*, 281 S.W.3d at 6; *Rainbow Home Health, Inc. v. Schmidt*, 76 S.W.3d 53, 57-8 (Tex. App. – San Antonio 2002, pet. denied). A trial court does not abuse its discretion when its decision is based on conflicting evidence or when some evidence of a substantive and probative character exists to support the trial court's decision. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998).

*Dismissal*

The underlying case was on file for more than thirteen months. On the day of trial, which was approximately five months after the trial date had been set, the evidence before the trial court showed, in part, that: (1) Medrano had been deported from the United States to Mexico at some unknown time during the preceding year, which was more than two months before trial and possibly longer; (2) Mr. Guardiola had not been able "to effectively communicate" with Medrano in Mexico and allegedly had not been able to secure Medrano's reentry into the United States for trial; (3) Mr. Guardiola could not prove his case without Medrano; and (4) Mr. Guardiola was seeking both a continuance and permission to withdraw from the case. No evidence was offered specifying what efforts, if any, had been attempted to secure Medrano's attendance from Mexico, nor was any evidence or argument offered to show why Medrano would be permitted to reenter the United States for trial in the future. The trial court knew that Olivas was prepared to try his case on the day of trial, and the clerk's record shows that Mr. Rush had filed both a motion in limine and a motion to exclude evidence. Medrano's motions for continuance and withdrawal of counsel were filed with the trial court one day before trial was scheduled to commence.

The extent of Medrano's activity in the case after it was set for trial is minimal and provides a foundation for the trial court's rulings. We first note that Mr. Guardiola contacted Texas Mutual's subrogation specialist, Mr. Guerrero, on March 3, 2009, one full week before trial, and advised him that he was filing a motion for continuance and that he planned to withdraw from the case. Moreover, having reviewed the arguments and evidence contained in the record, we are also aware, as the trial court must have been, of what is not contained in the record. No evidence was presented by either Medrano or Texas Mutual on the day of trial or at the reinstatement hearing to demonstrate what efforts, if any, had been attempted or, if applicable, were underway to locate and bring Medrano back into the United States during the months before trial. Neither Medrano nor Texas Mutual

provided any evidence to the trial court regarding any preparations made in furtherance of the prosecution of the case once it was set for trial. We have reviewed the docket sheet that is contained in the record on appeal. The docket sheet reveals that Medrano and Olivas were making moderate preparations in the case until the trial court issued its October 17, 2008, order setting trial for March 10, 2009. After the case was set for trial, however, the docket sheet reflects little, if any, activity by Mr. Guardiola to advance prosecution of the case.

Because we may affirm a dismissal on the basis of the trial court's inherent authority to dismiss the case and because we may affirm the dismissal under any applicable legal theory, we do not find that the trial court clearly abused its discretion by dismissing the case. *Villarreal*, 994 S.W.2d at 630; *Point Lookout West, Inc.*, 742 S.W.2d at 278; *Thomas*, 838 S.W.2d at 297. The trial court could have reasonably and properly determined that Medrano failed to prosecute the case with due diligence. *Villarreal*, 994 S.W.2d at 630; *Callahan,* 161 S.W.2d at 491; *see Sellers v. Foster*, 199 S.W.3d 385, 400 (Tex. App. – Fort Worth 2006, no pet.). The second issue on appeal is overruled.

*Reinstatement*

Under Rule 165a(3), a court must only reinstate a case if it finds that the failure to appear was not intentional or was not the result of conscious indifference but, rather, was due to an accident or mistake or that the failure has otherwise reasonably been explained. TEX. R. CIV. P. 165a(3). "Conscious indifference" has been defined as "failing to take some action that would seem to be indicated to a person of reasonable sensibilities under similar circumstances," and it requires more than negligence. *Sellers*, 199 S.W.3d at 400. Here, Texas Mutual presented evidence that it was aware that Medrano filed a motion to continue the trial and that Mr. Guardiola had filed a motion to withdraw as counsel. There is no guarantee that a motion for continuance of a case will be

granted. Having been informed that its interests could be adversely impacted by the filing of and subsequent ruling on Medrano's motion to continue, Texas Mutual could have, but did not, enter the litigation before trial to protect its interests. Similarly, because it knew that Mr. Guardiola, who had allegedly been representing Texas Mutual's interests in the case, was seeking to withdraw as counsel, Texas Mutual could have taken steps to protect its interests on or before the date of trial. These acts would seem to be indicated to a person of reasonable sensibilities under similar circumstances. Moreover, Texas Mutual has not shown that either it or Medrano failed to appear at trial due to accident or mistake.

We find that evidence of a substantive and probative character exists to support the trial court's denial of Texas Mutual's motion to reinstate the case. *In re Barber*, 982 S.W.2d at 366. For the foregoing reasons, and in light of our discussion concerning the second issue, we find that the trial court's denial of Texas Mutual's motion to reinstate was not erroneous and did not constitute an abuse of discretion. *Downer*, 701 S.W.2d at 241; *Buller*, 806 S.W.2d at 226. Because the trial court did not abuse its discretion, we overrule Issue Three.

*Plea for Intervention*

In its fourth issue, Texas Mutual complains that the trial court improperly struck its plea in intervention because the intervention was necessary to protect its interests and would not cause either unnecessary delay or prejudice to the existing parties.

While there is no deadline in the Rules of Civil Procedure for filing a motion to intervene, generally, one cannot intervene after final judgment. *Ledbetter*, 251 S.W.3d at 36. However, where a subrogee's interest has been adequately represented and then suddenly abandoned by another, the subrogee can intervene after judgment or on appeal if there is neither unnecessary delay nor prejudice to the existing parties. *Ledbetter*, 251 S.W.3d at 36. Rule 60 also provides that an intervention is

"subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60; *In re Union Carbide Corp.*, 273 S.W.3d 152, 156 (Tex. 2008); *Zeifman v. Sheryl Diane Michels*, 229 S.W.3d 460, 464 (Tex. App. – Austin 2007, no pet), *citing Highlands Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 794 S.W.2d 600, 601-02 (Tex. App. – Austin 1990, no pet.).

The first question to be resolved in determining if the trial court abused its discretion is whether Texas Mutual had a right to intervene in the action. *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex. 1982). The intervenor bears the burden to show a justiciable interest, legal or equitable, in the lawsuit. *Id.* The ultimate determination of whether an intervention should be struck, even where a justiciable interest is shown, has long been held to be vested in the sound discretion of the trial court. *Mendez*, 626 S.W.2d at 499 ("It is settled law that a motion to strike an intervention is addressed to the sound discretion of the trial court."); *Law Offices of Windle Turley*, 109 S.W.3d at 70; *McCord v. Watts*, 777 S.W.2d 809, 812 (Tex. App. – Austin 1989, no pet.).

We review a trial court's decision on a motion to strike an intervention for abuse of discretion. *See In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 (Tex. 2006) *citing Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990). An abuse of discretion denotes "act[ing] without reference to any guiding rules or principles; in other words . . . the act was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). That a trial court may decide a matter within its discretion in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion occurred. *Downer*, 701 S.W.2d at 241-42.

Texas Mutual's self-proclaimed right of subrogation is minimally supported by evidence in the record, namely, Mr. Guerrero's affidavit and the letters affixed thereto. Texas Mutual promotes its argument that the plea for intervention should have been granted by seeking to analogize the facts

in the *Ledbetter* case with the facts in this case. *Ledbetter*, 251 S.W.3d at 36. In *Ledbetter*, Texas Mutual, our Appellant in this appeal, was also seeking subrogation and on the same day that the trial court was to consider a settlement agreement that had been submitted for the trial court's approval, appeared and sought to intervene. *Ledbetter*, 251 S.W.3d at 34, 37. There, the trial court determined that there would be no unnecessary delay or prejudice by allowing the intervention. *Ledbetter*, 251 S.W.3d at 36.

The facts in this case support a different outcome than that in *Ledbetter*. One week before trial, Texas Mutual received notice that Mr. Guardiola was seeking a continuance in the case and was also seeking to withdraw not only as counsel for Medrano but, allegedly, for Texas Mutual. Texas Mutual had a right to intervene and appear but, despite the risk that the motion for continuance would be denied, failed to do either. Instead, Texas Mutual relied on its belief that the continuance would be granted and failed to take any steps to intervene or otherwise protect its interests in the week before trial when its right to recovery remained viable. On the day of trial, Texas Mutual did not appear or present evidence in an attempt to protect its interests in the event the motion for continuance was denied. Nor did Mr. Guardiola make any argument regarding Texas Mutual's interests. The trial court heard evidence of delay and prejudice from Olivas, denied the motion to continue, and granted the dismissal, which effectively terminated Texas Mutual's right to recovery.

Unlike *Ledbetter*, here Texas Mutual did not file its plea in intervention for more than three weeks after the case was dismissed, after its right to recovery had expired. *See Ledbetter*, 251 S.W.3d at 34, 36. The trial court conducted a hearing where Texas Mutual failed to present to the trial court a legitimate explanation for its delay in seeking intervention. Texas Mutual did not show that its failure to timely seek intervention was the result of accident or mistake but, rather, relied upon its belief that a continuance would be granted. On the day of trial, Mr. Guardiola informed the

trial court that he could only prove the case with Medrano present and, at the intervention hearing, Texas Mutual did not show that it could prove the case without him. No one presented evidence showing that any efforts had been made to return Medrano to the United States or showing a specific time frame within which Medrano could reasonably be expected to be returned to the United States for trial. In fact, Texas Mutual first claimed that it would go to Mexico to depose Medrano and then confessed to the trial court that it would first need to find Medrano in Mexico. The trial court also heard Olivas's evidence regarding the unspecified delay in bringing the case to trial and the resulting prejudice he would suffer from the attempted intervention. Having considered the parties' arguments, the trial court struck the plea in intervention.

Under these facts, the trial court's ruling was within the zone of reasonable disagreement. In the absence of findings of fact and conclusions of law, we find the trial court properly could have found that the intervention of Texas Mutual would cause unnecessary delay in the case and unnecessary prejudice to Olivas.[2] *Point Lookout West, Inc.*, 742 S.W.2d at 278; *Fox*, 225 S.W.3d at 200 ("If the order does not specify a particular reason for the dismissal, we will affirm if any proper ground supports the dismissal."); *Thomas*, 838 S.W.2d at 297. As the trial court did not abuse its discretion in striking Texas Mutual's plea in intervention, we overrule the fourth issue.

## CONCLUSION

The trial court's judgment is affirmed.

_____

GUADALUPE RIVERA, Justice

August 25, 2010

---

[2] This opinion should not be construed to mean that a party may never intervene post-judgment or post-dismissal but, under these facts, we do not believe that the trial court erred in striking the plea in intervention.

Before Chew, C.J., McClure, and Rivera, JJ.